**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:04-cr-128-23** |
| **LARRY GOOCH** | ) | |
| | ) | |
| | | |
| | ) | |
| **IN RE:  JURY ISSUE** | ) | **Case No. 1:07-mc-289** |
| | ) | |
| | ) | |

**<u>MOTION FOR AN ORDER TO SHOW CAUSE</u>**

Juror LilliAnn Williams, by and through undersigned counsel, hereby respectfully requests that this Court enter an Order to Show Cause requiring the District of Columbia, District of Columbia Public Schools and Principal Cheryl Warley  to appear and show cause why they did not violate the Jury System Improvements Act, 28 U.S.C. § 1875.  As set forth in the accompanying Petition of Juror LilliAnn Williams for Relief under the Jury System Improvements Act, Ms. Williams was intimidated, coerced and wrongfully excessed by District of Columbia Public Schools in retaliation for her absence from work due to her jury service on the four-month long trial in the *United States v. Gooch* (Case No. 1:04-cr-128-23) matter.  As set forth in the Petition, and the accompanying Memorandum in Support of the Motion for Show Cause, the District of Columbia, District of Columbia Public Schools and Principal Warley should be required to show cause why actions taken with respect to Ms. Williams did not violate the Jury System Improvements Act.

WHEREFORE, this Motion for an Order to Show Cause should be GRANTED.


Date:  November 13, 2007                          Respectfully submitted,


                                                   /s/ Gregory S. Kaufman_____
                                                  Hamilton P. Fox, III (D.C. Bar No. 113050)
                                                  Gregory S. Kaufman (D.C. Bar No. 464208)
                                                  Sutherland Asbill & Brennan LLP
                                                  1275 Pennsylvania Ave., NW
                                                  Washington, D.C. 20004
                                                  Tel. No. (202) 383-0100
                                                  Fax No. (202) 637-3593

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 1:04-cr-128-23** |
| LARRY GOOCH | ) | |
| | ) | |
| | | |
| | ) | |
| IN RE:  JURY ISSUE | ) | **Case No. 1:07-mc-289** |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER TO SHOW CAUSE**

COMES NOW, Juror LilliAnn Williams, by and through undersigned counsel, submits this Memorandum in Support of the Motion for an Order to Show Cause and moves pursuant to the Jury System Improvements Act for an Order to Show Cause requiring the District of Columbia, District of Columbia Public Schools ("DCPS") and Principal Cheryl Warley to appear and show cause why the actions taken with respect to Ms. Williams did not violate the Jury System Improvements Act, 28 U.S.C. § 1875.

**I.    Introduction**

As set forth more fully in the accompanying Petition of Juror LilliAnn Williams for relief under the Jury System Improvements Act, Ms. Williams was subjected to intimidation and coercion, and ultimately suffered a change in working conditions on pretextual grounds, by the District of Columbia Public Schools in retaliation for her absence from work due to her service on the jury in the four-month trial in the *United States v. Gooch* (Case No. 1:04-cr-128-23) matter.  DCPS' actions, including those of the Principal at J.O. Wilson Elementary School ("J.O. Wilson"), violated the Jury System Improvements Act, 28 U.S.C. § 1875 ("Juror Act").

Consequently, Ms. Williams is entitled to, among other relief, immediate reinstatement to her position as guidance counselor at J.O. Wilson.

## II.      Jurisdiction and Authority to Use a Show Cause Order

This Court has jurisdiction to consider and grant this Motion pursuant to section 1875(d)(1) of the Juror Act and section 1651(b) of the All Writs Act.  *See* 28 U.S.C. § 1875(d)(1)("An individual claiming that his employer has violated the provisions of [the Juror Act] may make application to the district court for the district in which such employer maintains a place of business . . . ."); 28 U.S.C. § 1651(b)(a "rule nisi may be issued by a justice or judge of a court which has jurisdiction"); *see also Sumler v. Secretary of Health and Human Services*, 834 F.2d 711, 713 (8th Cir. 1987)(citing 28 U.S.C. § 1651(b) and stating that "[t]he use of a show cause order is within the discretion of the district court.").  United States District Courts have utilized show cause orders in matters alleging violations of § 1875.  *See In re Heritage Propane*, No. 2:07-MC-01, 2007 WL 433290, at * 1 (E.D. Tenn. Feb. 6, 2007)(issuing an order for employer to show cause why it should not be held in contempt and injunctive relief issue as a result of employer requiring employee to take vacation days for absences due to jury service); *In re Grand Juror Ronnie Webb*, 586 F.Supp. 1480, 1481 (N.D. OH 1984)(granting grand juror relief under Juror Act pursuant to use of a show cause order).

## III.      Ms. Williams is Entitled to Relief Under the Juror Act

The Juror Act prohibits any employer from discharging, threatening to discharge, intimidating or coercing any permanent employee by reason of such employee's jury service.  *See* 28 U.S.C. § 1875(a).  Courts consistently find intimidation and coercion where supervisors make derogatory statements about jury service, are angry at employee absences despite having notice of the service obligation or change employee working conditions as a result of jury

service.  *See Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1520, 1526-27 (11th Cir. 1991)(finding that employer's reaction to employee's notification regarding her impending service by stating "Oh, great," and that "he got out of" jury service was evidence of intimidation and coercion); *In re Heritage Propane*, 2007 WL 433290 at * 3 (stating that under the Juror Act, "an employer has the duty to insure that his employee can report for jury duty without fear of reprisal"); *Lucas v. Matlack, Inc.*, 851 F.Supp. 225, 230 (N.D. WVa. 1993)(agreeing that employer's negative comments about jury service upon learning of employee's summons for jury duty could amount to coercion under the Juror Act); *Madonia v. Coral Springs P'ship, Ltd.*, 731 F.Supp. 1054, 1056 (S.D. Fla. 1990)(finding that employer's change in attitude towards employee as a result of her jury service smacked of retaliation).

As described in Ms. Williams' Petition, the acts of Principal Warley in reaction to Ms. Williams' jury service were part of a concerted effort to have Ms. Williams removed from J.O. Wilson.  These acts alone represent intimidation and coercion sufficient to violate the Juror Act. The fact that Ms. Williams was not discharged but was instead "excessed" from J.O. Wilson, which ultimately led to Ms. Williams being reassigned to another elementary school, does not excuse the acts of Principal Warley under the Juror Act.  Case law suggests that, in addition to intimidation and coercion triggered by an employee's jury service, any change in working conditions resulting from such service violates the Juror Act.  *See In re Heritage Propane*, 2007 WL 433290 at * 3 (holding that "[e]mployer reprisal, in any form, whether by discharge or the elimination of benefits otherwise available" violates the Juror Act); *Perkins v. Sara Lee Corp.*, 839 F.Supp. 393, 402 (W.D. Va. 1993)(finding that the Juror Act is violated when employer took away employee's autonomous and relaxed working conditions in retaliation for jury service).

For the reasons set forth in Ms. Williams' Petition, and as will further be demonstrated upon a show cause hearing, DCPS violated the Juror Act by intimidating, coercing and "excessing" Ms. Williams by reason of her jury service.  As such, Ms. Williams is entitled to be reinstated to her position as guidance counselor at J.O. Wilson and DCPS shall be enjoined from further violations.  In addition, DCPS is subject to a civil fine and should pay attorneys fees and expenses incurred on behalf of Ms. Williams.

WHEREFORE, the Motion for an Order to Show Cause should be GRANTED.


Date:  November 13, 2007                            Respectfully submitted,


                                                     /s/ Gregory S. Kaufman
                                                    Hamilton P. Fox, III (D.C. Bar No. 113050)
                                                    Gregory S. Kaufman (D.C. Bar No. 464208)
                                                    Sutherland Asbill & Brennan LLP
                                                    1275 Pennsylvania Ave., NW
                                                    Washington, D.C. 20004
                                                    Tel. No. (202) 383-0100
                                                    Fax No. (202) 637-3593

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of November 2007, the undersigned caused to be filed electronically with the Court the following: (1) Motion for an Order to Show Cause; (2) Memorandum in Support of Motion for an Order to Show Cause; (3) Proposed Order to Show Cause; and (4) Petition of Juror LilliAnn Williams Pursuant to the Jury System Improvements Act. I further caused true and correct copies of the same to be served upon the following in the manner described below:

Via Certified Mail, Return Receipt Requested
The Honorable Adrian M. Fenty
Mayor of the District of Columbia
1350 Pennsylvania Ave., NW
Washington, DC 20004

Via Hand-Delivery
Linda Singer
Attorney General for the District of Columbia
Office of the Attorney General for the District of Columbia
441 Fourth Street, NW
Suite 1060 North
Washington, DC 20001

Michelle A. Rhee
Chancellor, District of Columbia Public Schools
825 North Capitol Street, NE
Washington, DC 20002

_/s/ Gregory S. Kaufman____
Gregory S. Kaufman

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:04-cr-128-23** |
| **LARRY GOOCH** | ) | |
| | ) | |
| | | |
| | ) | |
| **IN RE:  JURY ISSUE** | ) | **Case No. 1:07-mc-289** |
| | ) | |
| | ) | |

## <u>ORDER</u>

Upon consideration of Petitioner LilliAnn Williams' Motion for an Order to Show Cause, the Memorandum in Support thereof, and the Petition of Juror LilliAnn Williams for Relief Pursuant to the Jury System Improvement Act, it is this _____ day of _____, 2007:

**ORDERED** that the Motion for an Order to Show Cause is granted, and it is further

**ORDERED** that the District of Columbia and Chancellor Michelle A. Rhee appear before the Court as set forth below and show cause why they did not violate the Jury System Improvements Act with respect to Petitioner LilliAnn Williams; and it is further

**ORDERED** that Petitioner and Respondents appear at a status hearing in this matter on the _____ day of _____, 2007 at _____ AM/PM in Courtroom _____; and it is further

**ORDERED** that Respondents produce to Petitioner's counsel at or before the status hearing the personnel records of LilliAnn Williams; any other documents relating to the hiring, employment and excessing of LilliAnn Williams, including but not limited to documents created by the Local School Restructuring Team relating to LilliAnn Williams; and it is further

**ORDERED** that the parties appear at an evidentiary hearing on the Petition on _____ ___, 200_ at _____ AM/PM in Courtroom ___.

_____

United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:04-cr-128-23** |
| **LARRY GOOCH** | ) | |
| | ) | |
| | | |
| | ) | |
| **IN RE:  JURY ISSUE** | ) | **Case No. 1:07-mc-289** |
| | ) | |
| | ) | |

## PETITION OF JUROR LILLIANN WILLIAMS
## PURSUANT TO THE JURY SYSTEM IMPROVEMENTS ACT

Pursuant to the Jury System Improvements Act, 28 U.S.C. § 1875 ("Juror Act"), Juror

LilliAnn Williams, by and through undersigned counsel, hereby respectfully petitions this

Honorable Court for an Order returning Ms. Williams to her position as a guidance counselor at

J.O. Wilson Elementary School ("J.O. Wilson") as it existed prior to the intimidation, coercion

and change in working conditions that resulted from her jury service; enjoining the District of

Columbia Public Schools ("DCPS") from further violations as to her; imposing a civil fine upon

DCPS; and granting such other relief as the Court deems just and proper.

### <u>Introduction</u>

1.      Ms. Williams was formally the guidance counselor at J.O. Wilson in Washington,

D.C.  During her employment at J.O. Wilson, Ms. Williams was summoned to appear at the

United States District Court for the District of Columbia for possible service on a jury.  Ms.

Williams appeared for service and was selected as a juror in the criminal trial *United States v.*

*Gooch* (Criminal Case No. 04-128-23).  Ms. Williams fulfilled her obligation of citizenship by

serving as a juror.  The criminal trial, in which the Government sought the death penalty, began on February 7, 2007 and ended on June 6, 2007.

2.     After notifying the Principal of J.O. Wilson, Cheryl Warley, that she had been selected as a juror in a case expected to last four months, Ms. Williams was subjected to intimidation and coercion by Principal Warley.  Ms. Williams' service caused her to miss substantial time from work but when she was able to report for work, she was treated with hostility and resentment by Principal Warley.  While serving on the jury, Principal Warley caused Ms. Williams to be "excessed" from J.O. Wilson, effectively ending her employment at that school at the completion of the 2006-2007 school year.  Principal Warley's, and consequently DCPS' intimidating and coercive acts and excessing of Ms. Williams because of her jury service violated the Juror Act.  Accordingly, Ms. Williams is entitled to the relief sought herein.

## Jurisdiction

3.     The Court has jurisdiction to consider and rule upon this Petition pursuant to § 1875(d)(1) of the Juror Act.  According to § 1875(d)(1), "[a]ny individual claiming that his employer has violated the provisions of [the Juror Act] may make application to the district court for the district in which such employer maintains a place of business and the court shall . . . appoint counsel to represent such individual in any action in the district court necessary to the resolution of such claim."

## Relevant Parties

4.     Ms. Williams is 64 years of age, a resident of the District of Columbia, an employee of DCPS and a former guidance counselor at J.O. Wilson.

5.     Cheryl Warley is an employee of DCPS and is the Principal at J.O. Wilson.  She was an employee of DCPS and Principal of J.O. Wilson during the time of Ms. Williams' jury service.

6.     DCPS is an agency of the District of Columbia government and is located at 825 North Capitol Street, NE, Suite 9076, Washington D.C. 20002.

### Factual Background

### LilliAnn Williams' Employment With DCPS

7.     Ms. Williams has worked as an educator and counselor in the DCPS system for thirty-three years.  Ms. Williams earned a doctorate degree in elementary education from Michigan State University and a mater's degree in guidance counseling from the University of the District of Columbia.

8.     From 1987 to the end of the 2006-2007 school year, Ms. Williams worked at J.O. Wilson.  During that time, Ms. Williams served as a teacher, special education coordinator and guidance counselor.  She held the guidance counselor position at J.O. Wilson from 1997 until she was excessed in 2007.  Over the last twenty years, Ms. Williams cultivated important relationships with students and parents (including parents who were former students), and established professional relationships with co-workers, superiors and the community.

9.     Throughout her time at DCPS, Ms. Williams consistently received complimentary performance reviews.  Her final evaluation before serving as a juror rated Ms. Williams performance as exceeding expectations.  That evaluation was conducted by Principal Warley.

**Call To Jury Service**

10.     In December 2006, Ms. Williams received a summons for jury service, indicating that she could be selected to serve as a juror in this Court in a four to six month death penalty trial.  She promptly presented the summons to Principal Warley's administrative assistance as employees were instructed to do upon receipt of a summons.

11.     Ms. Williams was told to, and did, report to the courthouse on January 9, 2007 to fill out a questionnaire.  Subsequently, Ms. Williams was told to report to the courthouse on January 25th, February 5th and February 7th.  Accordingly, Ms. Williams returned on those days but was not initially selected as a juror.  On February 7, 2007, Ms. Williams was informed that she had been selected as a juror for the *Gooch* trial.  That evening, Ms. Williams called Principal Warley at her home to inform Principal Warley that she had been selected and that the trial was expected to last four months with the jury sitting Mondays through Thursdays, with Friday being an off-day, for approximately the first three months of the jury's service.  Ms. Williams reported to work on her off-days often working late into the evenings.

**Principal Warley's Campaign of Coercion and Intimidation
In Connection With Ms. Williams' Jury Service**

12.     After Ms. Williams informed Principal Warley that she had been seated on a jury for a trial expected to last four months, Principal Warley called the Jury Deputy Clerk for the United States District Court wanting to know if Ms. Williams was at the courthouse, why she was at the courthouse and how long she would be there.  Principal Warley made the call because she did not believe what Ms. Williams had told her.

13.     A building engineer for DCPS who did work at J.O. Wilson was initially summoned to the Court on the same day as Ms. Williams for the same jury pool but was not selected.  Upon his return to work at J.O. Wilson, Principal Warley questioned him as to why

Ms. Williams was not able to get out of serving like he had. Principal Warley disapprovingly told the building engineer that Ms. Williams still had not come back to work – knowing that Ms. Williams was serving on the jury at the time.

14.     Principal Warley announced at a faculty meeting that occurred after the start of Ms. Williams' service that Ms. Williams had "volunteered" to serve on the *Gooch* jury, suggesting to the faculty that Ms. Williams was looking to get out of work. On the Friday following the faculty meeting, Ms. Williams went to work and was shocked when she was asked by her co-workers why she had "volunteered" to serve.

15.     Prior to her jury service, Ms. Williams had an open and professional working relationship with Principal Warley. This relationship changed immediately when Ms. Williams' jury service began. From that point forward, Principal Warley would largely not speak with Ms. Williams. The times she did speak with Ms. Williams, she did so in an intimidating and hostile way.

16.     On one occasion, Principal Warley expressed her hostility towards Ms. Williams by criticizing Ms. Williams for being absent due to her jury service in relation to special education reports that had to be completed while Ms. Williams was serving. Principal Warley expressed her hostility towards Ms. Williams and her jury service in relation to seemingly inconsequential matters as well. For instance, Principal Warley announced to everyone in the school office, including Ms. Williams, that Ms. Williams was no longer allowed to secure her purse in the school office, a practice that Ms. Williams had been following for over ten years. On another occasion, Principal Warley declared to the school office staff that Ms. Williams was no longer allowed to have access to school letterhead or that Ms. Williams was not allowed to have visitors in her office.

17.     On June 12, 2007, days after completing her jury service, Ms. Williams was asked by Principal Warley to sign a performance evaluation that lowered her rating from "Exceeds Expectations" to "Meets Expectations" despite the fact that Ms. Williams was not due for a performance evaluation for another two years and despite the fact that Principal Warley did not observe Ms. Williams for evaluation purposes as required.  Principal Warley told Ms. Williams that she personally changed the rating because Ms. Williams "was not there and she was not going to do [her] work."  After being contacted several times by a representative of the Washington Teacher's Union, Principal Warley agreed to void the evaluation.  *See* Exhibit A, attached hereto.

### Principal Warley Successfully Had Ms. Williams Declared Excess to the Needs of J.O. Wilson – Ending Ms. Williams Tenure at the School

18.     During Ms. Williams' jury service, Principal Warley recommended to DCPS Administration that Ms. Williams be declared "excess" to J.O. Wilson's needs and not be brought back for the next school year despite the fact that this would leave J.O. Wilson without a guidance counselor.

19.     Ms. Williams was supposed to receive a letter on the last day of school (June 15, 2007) informing her that she had been excessed but she never received a letter and was never told by Principal Warley that she had been excessed.  Principal Warley attempted to keep Ms. Williams from learning of the excessing, telling a former J.O. Wilson employee in August 2007 that someone at the school told Ms. Williams that she had been excessed and that she, Principal Warley, would fire whoever told Ms. Williams.

20.     Contrary to Principal Warley's belief, her attempt to blindside Ms. Williams was successful.  Ms. Williams only found out that her position as guidance counselor at J.O. Wilson

had been terminated when the DCPS Human Resources Office called her on June 29, 2007 to remind her to attend a career fair on July 9, 2007 for excessed teachers and counselors.

21.     Days before the beginning of the 2007-2008 school year, Ms. Williams received a letter informing her that she had been reassigned to a different elementary school. The new school is less desirable, in part, due to the loss of the relationships that Ms. Williams cultivated over the past twenty years at J.O. Wilson with students, parents (including parents who were former students), the community and co-workers. These relationships aided Ms. Williams in being as effective a guidance counselor as she could be and benefited the students at J.O. Wilson. Ms. Williams has been forced to abandon twenty years of progress and start over due to Principal Warley's hostility towards Ms. Williams' jury service.

<strong>Unsuccessful Efforts Towards Resolution With the DCPS</strong>

22.     On July 2, 2007, Ms. Williams sent a letter to this Court detailing the treatment she received as a result of her jury service and asking for the Court's help. *See* Exhibit B, attached hereto.

23.     On July 7, 2007, this Court appointed the undersigned to represent Ms. Williams in this matter pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. *In re Jury Issue*, Dkt. No. 3.

24.     On August 3, 2007, the undersigned's colleague, Hamilton P. Fox, sent a letter to Assistant Superintendent Dr. Francisco Millet, and others on behalf of Ms. Williams, notifying Dr. Millet that DCPS had violated the Juror Act and that accordingly, Ms. Williams was entitled to immediate reinstatement to her prior position at J.O. Wilson. *See* Exhibit C, attached hereto.

25.     Undersigned counsel was informed on August 21, 2007 that this matter was referred to the Acting General Counsel at DCPS. Despite assurances from the General Counsel's

Office that it was looking into the matter, undersigned counsel has not heard from the General Counsel's Office and has interpreted its silence as a decision on DCPS' part that it does not intend to reinstate Ms. Williams to her prior position at J.O. Wilson.

## The Juror Act

26.     The Juror Act prohibits an employer from discharging, threatening to discharge, intimidating, or coercing any permanent employee by reason of the employee's jury service, or the attendance or scheduled attendance in connection with such service.  28 U.S.C. § 1875(a).

27.     An employer who violates the Juror Act: "(1) shall be liable for damages for any loss or other benefits suffered by an employee by reason of such violation; (2) may be enjoined from further violations of this section and ordered to provide other appropriate relief, including but not limited to the reinstatement of any employee discharged by reason of his jury service; and (3) shall be subject to a civil penalty of not more than $1,000 for each violation as to each employee."  § 1875(b).

28.     An individual who is reinstated to a position of employment according to the Juror Act "shall be reinstated to his position of employment without loss of seniority, and shall be entitled to participate in insurance and other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such individual entered upon jury service."  § 1875(c).

29.     The Court may award a prevailing employee who brings an action under the Juror Act by retained counsel a reasonable attorney's fee as part of the costs.  Further, the Court may tax an employer, as costs payable to the Court, the attorney fees and expenses incurred on behalf of a prevailing employee, where such costs were expended by the Court pursuant to section 1875(d)(1).

30.    DCPS and Principal Warley violated the Juror Act by intimidating, coercing and excessing Ms. Williams because of her jury service.  A Motion for an Order to Show Cause is filed with this Petition.

### Relief Requested

WHEREFORE, Ms. Williams respectfully requests that the Court issue an Order:

1. Reinstating Ms. Williams to her position as guidance counselor at J.O. Wilson;

2. Enjoining DCPS and Principal Warley from further violations;

3. Imposing a civil fine on DCPS;

4. Awarding Ms. Williams attorney's fees and taxing DCPS, as costs payable to the Court, attorney fees and expenses incurred on behalf of Ms. Williams to the extent such costs are expended by the Court; and

5. Granting such other relief as the Court deems just and proper.

WHEREFORE, the Petition of Juror LilliAnn Williams for Relief under the Jury System Improvements Act should be GRANTED.


Date:  November 13, 2007                              Respectfully submitted,


                                                     _/s/ Gregory S. Kaufman_____
                                                     Hamilton P. Fox, III (D.C. Bar No. 113050)
                                                     Gregory S. Kaufman (D.C. Bar No. 464208)
                                                     Sutherland Asbill & Brennan LLP
                                                     1275 Pennsylvania Ave., NW
                                                     Washington, D.C. 20004
                                                     Tel. No. (202) 383-0100
                                                     Fax No. (202) 637-3593

# Exhibit A

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**PROFESSIONAL PERFORMANCE EVALUATION PROCESS**
**Annual Evaluation Form  SY 2006 - 2007**

Name:  Dr. Lilliann Jackson                    Social Security Number: 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
Position : Counselor                           Subject/Grade: School Counselor

School: J.O. Wilson ES                         School Year: 2006-2007

**Directions:** Educators will be rated on the degree to which targets and standards were met. Indicate the rating by placing and (x) on the line next to each item.

**Performance Categories**

**3 – Exceeds Expectations**
The educator performs duties and responsibilities above the expected level, which exceeds expectations in standards and targets.

**2 – Meets Performance Expectations**
The educator performs duties and responsibilities at the expected level within the parameters set.

**1 – Needs Improvement**
The educator performs minimal duties and responsibilities within the parameters set and is considered a marginal teacher.

**0 –  Performance is Unsatisfactory**
The educator fails to perform duties and responsibilities within parameters set

| | 3 | 2 | 1 | 0 |
|---|---|---|---|---|
| **Part 1**          *PERFORMANCE TARGETS* | | | | |
| System-wide | | | | |
| 1. Student Achievement (based on improving test data) | | X | | |
| 2. Professional Development | | X | | |
| 3. Implementation of Collaborative Planning | | X | | |
| Local school targets | | X | | |
| 1. Instructional target (can be documented in the classroom) | X | | | |
| 2. School initiative (s) | | X | | |
| **Part II**          *STANDARDS* | | | | |
| Demonstrates commitment to students and their learning | | X | | |
| Demonstrates knowledge of subject matter and how to teach it to students | X | | | |
| Demonstrates the ability to manage and monitor student learning | X | | | |
| Makes effective contributions to the total school program | X | | | |
| Fulfills professional duties and responsibilities | | X | | |
| *Total* | 9 | 14 | | |
| *GRAND TOTAL* | 23 | | | |

**FINAL RATING:** Place a check on the line next to the total rating for the school year

____ EXCEEDS EXPECTATIONS    ____ MEETS EXPECTATIONS    ____ NEEDS IMPROVEMENT    ____ UNSATISFACTORY

**Final Rating Scale:**
27-30   Exceeds Expectations*                    20-26  Meets Expectations
10-19   Needs Improvement                         0-9   Unsatisfactory

* Supporting documents must be attached to the annual evaluation form for anyone who exceeds expectations

**SIGNATURES**
The educator's signature does not indicate his/her agreement with this rating.

Educator's Signature _____    Date _____

Administrator's Signature _____    Date _____

Assistant Superintendent's Signature _____    Date _____

Copy one- Personal        Copy two- Educator        Copy three- Division        Copy four- Local School

# Exhibit B

United States District Court for the D strict of Columbia
Chambers of Judge Rosemary M. Collyer
333 Constitution Avenue, N.W.
Washington, D.C. 20001
July2, 2007


Dear Judge Collyer:


I am in receipt of your Letter of Appreciation dated June 18, 2007, thanking me for my
service as a juror (#13) in the United States v. Gooch Criminal Case No. 04-128-23.
Your judicial acumen and explicit directions made a very difficult task a little easier.
However, being a juror has had an adverse effect on my employer. More specifically,
Ms. Cheryl Warley my Principal, found this unacceptable, and I was subsequently
terminated from my counseling position at J.O. Wilson Elementary School. I am writing
to apprise you of the relentless problems I endured as a result of my jury service and to
elicit your help.

I am a Professional Guidance Counselor in the District of Columbia Public School
System. I have over thirty years of service in the System as an Educator/Counselor.
Throughout my tenure with the District of Columbia Public Schools, I have been an
excellent employee. My exemplary work is well documented and I have never received
less than complimentary performance reviews. That is, not until I was selected to serve as
a juror on the above referenced criminal case. Once seated on the case, I began
experiencing unfair and retaliatory treatment by my principal, Cheryl Warley. Listed
below is a detailed chronology of personal and professionally damaging incidents that I
was subjected to:

- Principal Warley called the jury office to verify my attendance and questioned my
  eligibility for service as a juror. Mrs. Dugger, Jury Deputy Clerk, can confirm
  this conversation. Mrs. Warley also admitted to me that she called because she
  could not believe how long I would have to serve. The day I was seated on the
  trial, I informed her of the projected time frame.

- Lester Chance, Roving Building Engineer, DC Public Schools, was summoned
  to Court on the same day I was summoned, (January 9, 2007). After responding
  to the background questionnaire, he was not selected to be a juror. However, he
  shared with me that Mrs. Warley repeatedly questioned him about how he got out
  of serving and why was I still being considered. He also related how angry she
  was with me for being away from work.

- In late February, I apprised Mrs. Dugger of information shared by five
  of my co-workers. I was told that Mrs. Warley stated in a faculty meeting that I
  had "volunteered" to serve on jury duty and that my absence from school was
  some how crafted by me. Mrs. Warley attempted to tarnish my reputation as a

professional and diminish my credibility as a Guidance Counselor. Mrs. Dugger stated this was "hearsay" but to let her know if I experienced any adverse actions during the trial or after the trial was completed.

- On Fridays, or on any other day I was not scheduled to be in Court, I reported to work. I worked diligently and stayed long after my scheduled working hours in an attempt to complete assigned tasks that I knew were critical to students' performance. However, I was met with hostility and silence from Mrs. Warley. She no longer spoke to me. Prior to jury duty, we had an open professional working relationship.

- Upon signing in for work on Tuesday, June 12, 2007, I was asked to sign a performance evaluation rating. In 2005, I received a documented Exceeds Expectation Rating from Mrs. Warley. According to the Washington Teachers Union  Contract Agreement, this rating for outstanding service stands for three years. The SY 06-07 represents the third year of my Exceeds Expectation Rating. Therefore, I was not scheduled to be rated until next school year (SY 07-08). Not only was I not rated, I was now being asked to sign a rating that was lower than Exceeds Expectations. I was perplexed. I questioned this action and asked for a conference with Mrs. Warley. The school secretary, Tamika Johnson, said she shared my concern with Mrs. Warley. I was told by Mrs. Johnson that Mrs. Warley said she knew I was not scheduled to be rated this year but that she intended to disregard the rating policy and lower my rating. I emailed Mrs. Warley to request, in writing, an explanation for the basis of her decision, and I requested a conference. Mrs. Warley met with me on Thursday, June 14, 2007, in my office. She stated that she personally changed the system-wide union approved Exceeds Expectation Rating system because "I was not there and she was not going to do my work". I told Mrs. Warley that I felt this action was punitive, because I was on jury duty. She denied it. At no time since my Exceeds Expectation Rating or during my jury duty did Mrs. Warley ever observe my performance or conference with me to inform me that my work was no longer exemplary. I called the Washington Teachers' Union and asked for help. Mrs. Rachel Hicks, Field Representative, responded. She called Mrs. Warley several times on Thursday, June 14, 2007, to let her know that under no circumstances was I to be rated at all this school year  and the performance evaluation form Mrs. Warley prepared for me was to be voided. Upon my request, Mrs.Warley presented me with a computer copy of the rating in question with "void" written in large letters. I requested the original performance evaluation form that was presented to me for my signature on Tuesday, June 12, 2007 by the secretary. I was refused.

- On Friday, June 29, 2007 I received a call from the Human Resources Office, DC Public Schools. The purpose of the call was to make sure I attended a Career Fair being held on Monday, July 9, 2007, at Randle Highlands Elementary Schools for excessed teachers and counselors (ET 15s).  I was shocked. I was told that I had been fired or excessed as counselor from my school and was being given an

opportunity to seek work through a job fair.   The caller stated she was calling on behalf of Adrienne Gault, Vacancy Management Specialist. I shared that this was the first time I had any knowledge of a change in my employment status. I spoke with Ms. Gault. She stated, matter-of-fact, that my position as Guidance Counselor at J. O. Wilson Elementary School had been terminated.  She asked was I at school on the last day, June 15, 2007 to receive and sign for my excess letter.  I shared I was at work all day on the 15th.   She then advised me to send an e-mail to Tiffany Tenbrook, Staffing Specialist, to request my excess letter and to be sure to attend the career fair in order to be assigned to a  "good school" somewhere else in the system.  I called the Washington Teachers Union again for help.  I am awaiting a response from Rachel Hicks. I, again, called Mrs. Dugger. She suggested that I prepare a letter to your attention through Chashawn White to inform you of the seriousness of my situation.  I left a message on her answering service.  I feel this is an extreme punitive measure taken against me by Mrs. Warley for fulfilling a civic responsibility.

I was called to jury duty, which my Principal Cheryl Warley found unacceptable, and I was consequently terminated from my counseling position at JO Wilson Elementary School.  When school opens in the fall of this year, I wish to return to J.O. Wilson Elementary School as a Guidance Counselor where I have conscientiously, faithfully and diligently worked for the past twenty years. I am requesting your immediate intervention to help repair this matter.


Sincerely,


LilliAnn Williams, Ph.D.
Home Number: (202) 462-9409

# Exhibit C

**Sutherland**
■ **Asbill &** ■
**Brennan** LLP
ATTORNEYS AT LAW

1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
202.383.0100
fax 202.637.3593
www.sablaw.com

HAMILTON P. FOX, III
DIRECT LINE: 202.383.0666
E-mail: phil.fox@sablaw.com

August 3, 2007

VIA CERTIFIED MAIL

Dr. Francisco Millet, Asst. Superintendent (Region 3)
Francis Junior High School
2425 N Street, NW
Washington, DC 2003

     Re:    Jury Service of Guidance Counselor LilliAnn Williams

Dear Dr. Millet:

     I write regarding the unlawful employment action taken against my client, LilliAnn Williams, by the Principal of J.O. Wilson Elementary School, Cheryl Warley, resulting from Ms. Williams recent jury service. Judge Rosemary M. Collyer of the United States District Court for the District of Columbia appointed me to represent Ms. Williams pursuant to 28 U.S.C. § 1875(d) of the Jury System Improvements Act ("Jury Act") following actions taken by Principal Warley and District of Columbia Public Schools ("DCPS") that violated the Jury Act. Principal Warley's egregious conduct and disregard for the duty every citizen has to serve on a jury when called upon caused Ms. Williams to lose her position as Guidance Counselor at J.O. Wilson. Ms. Williams should be reinstated to her prior position immediately in accordance with the Jury Act.

     The Jury Act prohibits any employer from discharging, threatening to discharge, intimidating or coercing any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service in any court of the United States. *See* 28 U.S.C. § 1875(a). A violation of this Act subjects DCPS to liability for damages, a civil fine and injunctive relief, including but not limited to the reinstatement of Ms. Williams. *See* 28 U.S.C. § 1875(b).[1] Courts consistently find intimidation and coercion where supervisors make derogatory statements about jury service, are angry at employee absences despite having notice of the service obligation and/or change employee work conditions as a result of jury service. *See Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1526-27 (11th Cir. 1991)(finding evidence sufficient for a jury to conclude employee was intimidated or coerced in violation of the Jury Act based on employer's statements inferring hostility towards jury service,

---

[1] The court may award a prevailing employee who brings such action by retained counsel reasonable attorney's fees and other costs incurred. *See* 28 U.S.C. § 1875(d)(2).

Francisco Millet, Asst. Superintendent
August 3, 2007
Page 2

prolonged anger at employee's absence and ongoing reprimands); *Madonia v. Coral Springs Partnership, Ltd.*, 731 F.Supp. 1054, 1056 (S.D. Fla. 1990)(finding that the change in work conditions and the change in attitude of the employer towards the employee as a result of the employee's jury service smacked of retaliation).

The circumstances surrounding the adverse employment action Ms. Williams was subjected to demonstrate that she was "excessed" as a direct result of her jury service. Ms. Williams has thirty-three years of service to the DCPS system as an educator and counselor, the last twenty of which have been at J.O. Wilson. Ms. Williams earned a doctorate degree in elementary education from Michigan State University and a master's degree in guidance counseling from the University of the District of Columbia. Throughout her tenure, Ms. Williams received complimentary performance reviews and established productive professional relationships with her co-workers and superiors. Ms. Williams circumstances abruptly changed for the worse on February 7, 2007 – the day she was selected to serve on the jury in the *United States v. Gooch* (Criminal Case No. 04-128) trial. That evening, Ms. Williams called Principal Warley at her home to tell her about her circumstances and explained that the trial was expected to last four months. The trial and jury deliberations, resulting in a conviction on four counts of murder, ended on June 6, 2007. Ms. Williams was required to be in court Mondays through Thursdays, with Friday being an off-day. Ms. Williams reported to work on her off-days, often working late into the evenings.

Statements made, and actions taken, by Principal Warley evidence a pattern of unfair and retaliatory treatment of Ms. Williams resulting from her jury service. These statements and action include, but are not limited to, the following:

- Jury Deputy Clerk for the U.S. District Court, Darlene Dugger, told Ms. Williams that her Principal called the Clerk's office, wanting to know if Ms. Williams was at the courthouse, why she was at the courthouse and how long she would be there. Principal Warley made this call knowing that Ms. Williams had been seated on the jury for a trial expected to last four months.

- Lester Chance, Roving Building Engineer for DCPS, was summoned to the court on the same day as Ms. Williams for the same jury pool, but was not selected. Upon his return to work at J.O. Wilson, Principal Warley asked him if he had been selected to serve on the jury. Mr. Chance replied that he had not been selected. Principal Warley questioned Mr. Chance as to why Ms. Williams was not able to get out of serving like he had. Mr. Chance recalls Principal Warley stating disapprovingly that Ms. Williams still had not come back to work even though she was serving on the jury at the time. (*See* Statement of Lester Chance, Exh. A).

- Numerous co-workers recall Principal Warley stating at a faculty meeting after the start of Ms. Williams' service that she had "volunteered" to serve on the jury –

Francisco Millet, Asst. Superintendent
August 3, 2007
Page 3

suggesting that Ms. Williams was looking to get out of work. On the Friday following the faculty meeting, Ms. Williams went to work and was shocked when co-workers asked her why she had "volunteered" to serve.

- Ms. Williams noticed an immediate change in her relationship with Principal Warley when her service began. The professional working relationship that existed previously abruptly changed to the point that Principal Warley would not speak with Ms. Williams unless it was in an intimidating and hostile voice. Ms. Williams recalls Principal Warley expressing her anger with Ms. William's jury duty absence in relation to the completion of special education reports. Some changes related to seemingly inconsequential matters such as Principal Warley's declaration in the school office that Ms. Williams was no longer allowed to secure her purse in the school's office, a practice she had been following for over ten years or that Ms. Williams was no longer allowed access to school letterhead.

- On June 12, 2007 and days after completing her service, Principal Warley asked Ms. Williams to sign a performance evaluation that lowered her rating from "Exceeds Expectation" to "Meets Expectation." Her previous evaluation, made two years before, was "Exceeds Expectation." According to the Collective Bargaining Agreement, Ms. Williams was not due for a performance evaluation until the following year. Further, Principal Warley had not observed Ms. Williams for rating purposes as required. At a June 14th conference requested by Ms. Williams, Principal Warley stated that she personally changed the rating because Ms. Williams "was not there and she was not going to do [her] work." After being contacted several times by a representative of Washington Teacher's Union, Principal Warley agreed to void the evaluation. (*See* Voided Evaluation, Exh. B).[2]

Having endured the intimidating and hostile atmosphere created by Principal Warley as a result of her jury service, Ms. Williams suffered one final indignity at the hands of the Principal. On June 29, 2007, Ms. Williams received a call from DCPS Human Resources Office urging her to attend a career fair being held for excessed teachers and counselors. This was the first Ms. Williams had heard that she had been excessed despite the fact that she should have received an excess letter on June 15th, the last day of school. Ms. Williams was told that the Local School Restructuring Team, headed and handpicked by Principal Warley, decided that she should be excessed. Ms. Williams was told by her union representative that she was the only employee, teacher or non-teacher, excessed at J.O. Wilson. The decision to recommend certain personnel

---

[2] Given the importance of an "Exceeds Expectation" rating to an employee who has been excessed, Principal Warley's actions suggest that her intention was to prevent Ms. Williams from being able to avail herself of the waiver from excessing procedures found in the Collective Bargaining Agreement between the Union and DCPS. *See* § C(5).

Francisco Millet, Asst. Superintendent
August 3, 2007
Page 4

for excessing seems to have been made by the LSRT during its process of developing a budget for the next school year, which began in March 2007.

The facts leave little doubt that Principal Warley intimidated and coerced Ms. Williams and drastically changed her working conditions as a result of Ms. Williams jury service. Not only were Principal Warley's actions in violation of the law, they were foolhardy. The DCPS system can ill afford to treat highly qualified and highly rated employees with over thirty years in the system this way. Ms. Williams dedicated twenty years of service to J.O. Wilson only to be cast aside at the whim of a Principal who perceived some wrong in Ms. Williams fulfilling her duty as a United States citizen.

Ms. Williams asks that she be reinstated to her guidance counselor position at J.O. Wilson for the upcoming school year. It is our sincere hope that this matter can be handled informally and expeditiously. Should you decide not to reinstate Ms. Williams, we will initiate an action in U.S. District Court and seek an order reinstating Ms. Williams and awarding costs, including attorneys fees, to Ms. Williams. We also caution DCPS from taking retaliatory action against Ms. Williams as a result of her pursuing her legal rights.

Please inform us of your decision by August 7, 2007 so that we may put this matter to rest or initiate a court action. Feel free to call me at (202) 383-0666 if you wish to discuss this matter further.

Sincerely,

Hamilton P. Fox, III

Hamilton P. Fox, III

HPF/gsk
cc:    LilliAnn Williams

Adrian Fenty, Mayor
John A. Wilson Building
1350 Pennsylvania Ave., NW
Washington, DC 20004

Michelle Rhee, Chancellor
Office of the Chancellor, DCPS
825 North Capital Street, NE
Washington, DC 20002

Francisco Millet, Asst. Superintendent
August 3, 2007
Page 5

Victor Reinoso, Deputy Mayor of Education
John A. Wilson Building
1350 Pennsylvania Ave., NW, Suite 303
Washington, DC 20004

Cheryl Warley, Principal
J.O. Wilson Elementary School
660 K Street, NE
Washington, DC 20002

Morris Redd, President J.O. Wilson PTA
944 Eastern Ave., NE
Washington, DC 20019

Tommy Wells
Council Member, Ward 6
John A. Wilson Building
1350 Pennsylvania Ave., NW, Suite 408
Washington, DC 20004

Rachael Hicks, Field Representative
Washington Teachers' Union
1717 K Street, NW, Suite 902
Washington, DC 20036

## STATEMENT OF LESTER CHANCE

I, Lester Chance, state as follows:

1.     I am a Roving Building Engineer for the District of Columbia Public Schools.

2.     During the 2006-2007 school year, one of the schools that I serviced was J.O. Wilson Elementary School.

3.     I received a jury duty summons requiring me to report for jury duty on January 9, 2007 at the United States District Court for the District of Columbia.

4.     I reported for jury duty as instructed in the summons. I encountered LilliAnn Williams at the courthouse and learned that she and I were in the same jury pool and that we both filled out the same prospective juror questionnaire. I recognized Ms. Williams as the guidance counselor at J.O. Wilson.

5.     After approximately one week, I was told by the court that I had not been selected to be a juror and I returned to work. I later learned that Ms. Williams had been selected as a juror.

6.     While Ms. Williams was still in the jury pool, I encountered J.O. Wilson Principal Cheryl Warley while at the school. We had a discussion and the following occurred:

- Principal Warley asked me if I had been selected for the jury and I responded that I had not been selected.

- Principal Warley questioned me as to why Ms. Williams did not get out of jury duty like I had. I explained that Ms. Williams and I could not respond the same way to the questions asked because our life experiences are different.

- Principal Warley was interested in the differences between Ms. Williams and myself that caused me to be released and Ms. Williams to be chosen.

•     With a disapproving look on her face, Principal Warley commented that Ms. Williams had still not come back to work. I believe Ms. Williams was performing her jury service when this comment was made.

Lester Chance