UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
                                        )
                                        )
IN RE: JURY ISSUE                       )          Civil Action No. 07-mc-289 (RMC)
                                        )
                                        )
_____)

## THE DISTRICT OF COLUMBIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHRISTINE MADISON'S MOTION FOR ORDER TO SHOW CAUSE

The District of Columbia and State Superintendent of Education Deborah Gist (collectively, "the District"), by and through undersigned counsel, hereby submit this Memorandum of Points and Authorities in Opposition to Christine Madison's Motion for Order to Show Cause in the above-referenced matter, in accordance with LCvR 7(b).

The District opposes the Motion because it is—at best—procedurally improper and because Ms. Madison's claims are substantively meritless. The expiration of her term appointment was entirely unrelated to her jury service, even assuming that the cited federal law applies here. Equally fatal to petitioner's claim, there are no property or liberty interests protected by the Constitution in limited-term, temporary employment contracts like that at issue here.

### Introduction

In May of 2006, Ms. Madison was hired on a thirteen-month, term appointment, to work as a Staff Assistant in the Operations Department at the D.C. State Education Office (since renamed the Office of the State Superintendent of Education ("OSSE")), under Dr. Jo Ann

Smoak. Petition ¶ 6; Declaration of Jo Ann Smoak, dated Nov. 13, 2007 ("Smoak Decl."), ¶ 6.[1]

There were six other employees in that office that Dr. Smoak supervised, in addition to Ms.

Madison. Smoak Decl. ¶ 6. All the other employees were at a higher grade level, and had been

there at least one year, *i.e.*, there were no other employees hired at about the same time as Ms.

Madison. *Id.*, ¶¶ 6–7.

Ms. Madison's job performance was not always satisfactory. *Id.*, ¶ 16.

In January of 2007, Ms. Madison was summoned for jury service, and informed Dr.

Smoak. Petition ¶ 9; Smoak Decl. ¶ 11. Ms. Madison was selected as a juror, and served from

February of 2007 to early June of 2007. Petition ¶ 11.

During Ms. Madison's jury service, she continued to receive her full pay, and her duties

were divided up among remaining employees. Smoak Decl. ¶¶ 5, 8.

When Ms. Madison's term expired, on or about June 14, 2007, no one was hired to

replace her. *Id.* at ¶ 8. In August of 2007, Ms. Madison applied for and received unemployment

compensation. *Id.* ¶ 9.

Petitioner's counsel was appointed in July of 2007. *See* Dkt. No. 1. Counsel for the

petitioner wrote to Dr. Smoak on August 3, 2007, and demanded Ms. Madison's "immediate

reinstatement and damages . . . ." Petitioner's Exhibit C. The District responded on August 10,

2007. Petitioner's Exhibit D.

No further communication was received from petitioner or counsel until the instant

motion and petition, filed on November 5, 2007.

---

[1]     It appears that Ms. Madison's Motion and the Petition were filed on the same day, November 5, 2007. The District will treat the Petition as an original complaint and, pursuant to Fed. R. Civ. P. 12(a)(1)(A), will file its response to that document within the allotted time period.

<u>Argument</u>

The decision not to renew Ms. Madison's contract was not related in any way to her jury service. Ms. Madison had no legitimate entitlement to the renewal of the contract. The District here complied at all times with local and federal law, and with the Constitution.

The petitioner here claims a violation of 28 U.S.C. § 1875, the Jury Service Improvements Act ("JSIA"). Petitioner's arguments regarding this law are little better than sophistry. Petitioner claims—without support in the JSIA or case law—that "permanent employee" should be read to mean "temporary employee." Such blatant doublespeak barely merits response.

Petitioner's counsel has captioned this matter as a "motion for an order to show cause," a procedure generally reserved for serious contempt or emergency matters, but there is no "emergency" here in any sense of the word, as Ms. Madison's contract expired almost five months ago.[2]

---

[2]     The instant motion appears to be little more than a creative attempt to avoid the standards governing emergency injunctive relief, which petitioner has no hope of meeting here. *See, e.g., Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (emergency injunctive relief "is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion."). At a minimum, a plaintiff seeking emergency injunctive relief must make a threshold showing of irreparable injury. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Because petitioner here has only alleged economic injuries, which may be remedied financially if she ultimately prevails, those injuries cannot, as a matter of law, be considered "irreparable." *See, e.g., Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

In fact, one could argue that counsel's choice of procedure here is a cynical attempt to force a precipitous response from the District. Petitioner cites two court cases to demonstrate that federal district courts "have utilized" show-cause orders in cases under the JSIA. Motion at 2. What petitioner fails to note, however, is that those two cases are the *only* two such cases involving the use of show-cause orders in proceedings pursuant to the JSIA. Notwithstanding this, the cases are utterly inapposite here, as they involve *permanent* employees whose employers consciously (and repeatedly) took action against them because of their jury service. The actions of the District here do not come close to meeting this egregious threshold.

The plain terms of the JSIA reveal that it does *not* apply to the instant matter. While there is scant relevant case law on that Act, especially in this jurisdiction, what few recent citations exist fully support the District here. *See, e.g., Shaffer v. ACS Gov't Servs Inc.*, 454 F.Supp.2d 330, 335–36 (D. Md. 2006) (permanent employee terminated *during* his jury service "has not brought forth sufficient evidence to persuade the Court that his jury service more than likely motivated Defendant to terminate his employment."); *McMahon v. Hewlett-Packard Co.*, 2006 WL 753237, *2 (W.D. Wash. 2006) (permanent employee's JSIA claims dismissed where defendant "has advanced a non-discriminatory reason for plaintiff's termination, poor job performance, and plaintiff has produced no evidence suggesting this reason is a pretext.").[3]

Here, of course, Ms. Madison was a temporary employee who had completed her jury service at the time her contract expired. Moreover, the evidence indicates that Ms. Madison was not treated differently because of that service. *See* Smoak Decl. ¶¶ 5–19.

The prohibitions of that Act apply *only* to "permanent employees." 28 U.S.C. § 1875(a). By her own admission, Ms. Madison was a temporary, term appointee, Petition ¶ 6, hence the JSIA does not apply.

Leaving the JSIA aside, petitioner was not "deprived" of any cognizable interest at all, much less one that rose to the level of a constitutional interest. Crystal-clear, decades old case law should leave little doubt that petitioner cannot prevail.

The concept of "due process" imposes procedural requirements on the government before it deprives individuals of protected interests. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Although protected by the Constitution, such interests are not created by it. *Board of Regents of*

---

[3]    In *McMahon*, the permanent employee had worked for HP for 26 years at the time of her termination, and her 18-month term of grand-jury service was completed about four months before her discharge. *Id.*

*State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Instead, property and liberty interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. at 577.

To have a property interest in a government benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (*quoting Roth*, 408 U.S. at 577).[4] Ms. Madison was not deprived of any protected interest here. District law does not create any property or liberty interest in continued government employment under a temporary, term appointment, as decades of case law explain.

Ms. Madison was hired under a longstanding procedure that conferred no rights under the District's Comprehensive Merit Personnel Act ("CMPA"). *See* D.C. Code § 1-608.01(a)(6) (2007 Supp.) ("Temporary, term, or other time-limited appointments . . . do not confer permanent status . . . ."); D.C. Mun. Reg., Tit. 6, §§ 823.7 ("A term employee shall not acquire permanent status on the basis of his or her term appointment . . ."), 823.8 ("The employment of a

---

[4]        The government's behavior in terminating an employer-employee relationship may implicate an employee's "liberty interest," if, for example, the employee can plead and prove a "reputation plus" claim or a "foreclosure claim." Such claims can be shown where an employee demonstrates that he or she was "terminated in a manner that 'stigmatizes' them by impugning their reputations or foreclosing their future employment opportunities." *Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995) (citing *Roth*, 408 U.S. at 572–76); *see also O'Donnell v. Barry*, 148 F.3d 1126, 1139 (D.C. Cir. 1998). Petitioner has not made (and cannot prove) these types of allegations here; in fact, petitioner concedes the opposite—that "Dr. Smoak offered to assist her in securing other employment by providing her with a favorable job reference." Petition ¶ 18; Smoak Decl. ¶ 19. "[I]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he is simply not rehired at one job but remains as free as before to seek another." *Roth*, 408 U.S. at 575.

term employee shall end automatically on the expiration of his or her term appointment unless he or she has been separated earlier."), 826.1 (same).

District law has been indisputable on this point for many years, and for petitioner to claim otherwise is simply incorrect. *See, e.g.*, *Grant v. District of Columbia*, 908 A.2d 1173, 1178 (D.C. 2006) (CMPA and its implementing regulations provide procedural protections for "Career Service" employees subject to adverse employment actions (such as notice and hearing rights, and the right to be terminated only for cause); all other employees "cannot claim those protections.") (citations omitted).

"To show a property interest in government employment, a plaintiff must demonstrate that under the relevant state law, 'he did not serve in his job at the employer's "will," but he could be removed only 'for cause.'" *Thompson v. District of Columbia*, 478 F.Supp.2d 5, 9 (D.D.C. 2007) (citing, *inter alia, Bishop v. Wood*, 426 U.S. 341, 344–47 (1976)). Petitioner here cannot make the required showing.

The seminal *Roth* case itself fully controls here and requires dismissal of the petition. There, the Supreme Court held that a non-tenured professor with a fixed-term appointment (for one academic year) had no legitimate claim of entitlement to re-employment when the university declined to renew the contract. *Roth*, 408 U.S. at 578.

Identically here, because Ms. Madison was working under a thirteen-month, term appointment, she cannot reasonably claim a legitimate entitlement to renewal of that contract. *Id. See also, e.g., Wilkinson v. Legal Services Corp.*, 27 F.Supp.2d 32, 47 (D.D.C. 1998) (former inspector general of LSC had no property interest in renewal of his limited-term contract; nothing in the law, his contract, nor in the LSC's personnel manual "set forth limitations on LSC's discretion not to renew his contract."); *Bason v. Judicial Council of the District of*

*Columbia Circuit*, 86 B.R. 744, 749 (D.D.C. 1988) (bankruptcy judge's request for TRO denied because he failed to show a property interest in, and could show a legitimate claim of entitlement to, reappointment to the bench).

Even if Ms. Madison could show that her colleagues' limited-term contracts are "usually" renewed, *see* Petition ¶ 7, the fact that Ms. Madison's was *not* is legally irrelevant:

> To be sure, the respondent does suggest that most teachers hired on a year-to-year basis by [the employer] are, in fact, rehired. But the District Court has not found that there is anything approaching a 'common law' of re-employment, so strong as to require University officials to give the respondent a statement of reasons and a hearing on their decision not to rehire him.

*Roth*, *supra*, at n.16 (citing *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)).

Ms. Madison was no different than an "at will" employee. "[A]n at-will employee has no liberty or property interest in continued employment, and it is clear that D.C. law creates no such interest." *O'Donnell*, 148 F.3d at 1139. *See also, e.g., Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994) ("Typically, permanent and classified employees have been held to have property interests . . . while probationary and nonclassified employees have not." "Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely.") (quoting, *inter alia*, *Hall v. Ford*, 856 F.2d 255, 265 (D.C.Cir.1988)).

Just as in run-of-the-mill government contracts for goods and services, "where a contract is renewable solely at the option of the government, the government is under no obligation to exercise the option." *Marketing and Management Information, Inc. v. United States*, 62 Fed.Cl. 126, 130 (Fed.Cl. 2004) (citing *Government Systems Advisors, Inc. v. United States*, 847 F.2d 811, 813 (Fed. Cir. 1988)). So too here. The District chose not to renew Ms. Madison's contract, and petitioner can point to no limitations on the District's discretion on that decision.

<u>Conclusion</u>

For the reasons set forth above, the Motion for Order to Show Cause should be denied.


DATE: November 14, 2007          Respectfully submitted,

                                 LINDA SINGER
                                 Attorney General for the District of Columbia

                                 GEORGE C. VALENTINE
                                 Deputy Attorney General, Civil Litigation Division

                                 _____/s/ Ellen A. Efros_____
                                 ELLEN A. EFROS, D.C. Bar No. 250746
                                 Chief, Equity Section I
                                 441 Fourth Street, N.W., 6th Floor South
                                 Washington, D.C. 20001
                                 Telephone: (202) 442-9886
                                 Facsimile: (202) 727-0431

                                 _____/s/ Andrew J. Saindon_____
                                 ANDREW J. SAINDON, D.C. Bar No. 456987
                                 Assistant Attorney General
                                 Equity I Section
                                 441 Fourth Street, N.W., 6th Floor South
                                 Washington, D.C. 20001
                                 Telephone: (202) 724-6643
                                 Facsimile: (202) 727-0431
                                 andy.saindon@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
                                )
                                )
IN RE: JURY ISSUE              )       Civil Action No. 07-mc-289 (RMC)
                                )
                                )
_____)

<u>ORDER</u>

Upon consideration of Christine Madison's Motion for Order to Show Cause, the Memoranda of Points and Authorities in Support thereof and in opposition thereto, her Petition Pursuant to the Jury System Improvements Act, the entire record herein, and it appearing that the relief should be denied, it is hereby:

ORDERED, that Christine Madison's Motion for Order to Show Cause be, and hereby is, DENIED, and it is

FURTHER ORDERED, that the Petition Pursuant to the Jury System Improvements Act is hereby DISMISSED.

SO ORDERED.


DATE: _____                 _____
                                              ROSEMARY M. COLLYER
                                              United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                   )
                                   )
                                   )
IN RE: JURY ISSUE                  )        Civil Action No. 07-mc-289 (RMC)
                                   )
                                   )
                                   )
```

## DECLARATION OF JO ANN SMOAK

Pursuant to 28 U.S.C. § 1746, I, Jo Ann Smoak, declare and state as follows:

1.  I am over the age of eighteen (18) years, competent to testify to the matters contained herein, and testify based on my personal knowledge and information.

2.  Since May of 2005, I have been employed as the Director of Operations at the D.C. Office of the State Superintendent of Education ("OSSE"), formerly known as the D.C. State Education Office. My duties include overseeing the day-to-say operations of the OSSE.

3.  Prior to my current position, I worked as Auditor and Special Assistant to the Executive Director of the Office of Integrity and Oversight in the D.C. Office of the Chief Financial Officer.

4.  My educational background includes a bachelor's degree in Business Education, a master's degree in Business Administration, and a PhD in Public Administration.

5.  I have reviewed the documents filed by Ms. Christine Madison in this matter and find most of the allegations she makes to be inaccurate. The OSSE's decision not to renew her contract was not related to her jury service. During the term of Ms. Madison's contract with the OSSE, she was paid at her correct rate at all times, including her time on jury service.

6.  Ms. Madison was hired in May, 2006, for a 13-month "term appointment." Contrary to Ms. Madison's allegations, there were no other workers hired at or around that time in the

Operations Department; all of Ms. Madison's colleagues had been there at least a year when she started working. Aside from Ms. Madison, there were six other employees in the office that I supervised: Anthonisha Felton, Bachir Kabbara, Mutanda Parris, Ronald Pitts, Marsha Proctor, and Diane Scroggins. Ms. Proctor, however, was an employee detailed from the Executive Office of the Mayor and not an OSSE employee at that time.

7.  All six employees were at a higher grade-level than Ms. Madison.

8.  When Ms. Madison's contract expired, we did not hire anyone to replace her; the work she performed was divided up among current employees.

9.  OSSE has received documentation indicating that Ms. Madison applied for and received unemployment compensation beginning in August of 2007.

10. I categorically deny that either I or anyone on my staff "coerced" or "intimidated" Ms. Madison in connection with her jury service, or for any other reason. She alleges that "she was treated with increased hostility and resentment in the workplace." Petition ¶ 14. I never participated in or witnessed any such incidents, nor am I aware of any that occurred.

11. When Ms. Madison was chosen for jury service, she promptly alerted me. Ms. Madison states that I then said that Deborah A. Gist, the State Superintendent of Education, "could not use Ms. Madison if she were absent from work for such a time period." Petition ¶ 9. She also alleges that I "made suggestions" to her "about how she might avoid being selected as a juror." *Id.* These statements are false.

12. Ms. Madison also states that I said that "everyone's job duties in Operations would be increased, and that Operations could not afford to do without each of its employees during such a critical and busy time." *Id.* ¶ 10. This statement, too, is false.

13. When she told me she had been chosen for jury service, we discussed it extensively. I have served as grand jury foreman for six months, and communicated my support when Ms. Madison was chosen.

14. In addition, we had several discussions at staff meetings on how to support Ms. Madison during her service and parcel out her work to others, where I also regularly discussed with Ms. Madison and the other operational staff my positive experience serving as a juror.

15. During her term appointment, Ms. Madison's primary responsibilities were payroll, petty cash, and telecommunications. She alleges that her workload was not immediately divided up among her co-workers, and that she was essentially required to perform her entire weekly workload on the one day per week she was at the office during her jury service, usually Fridays. This statement, too, is false. Others in the department quickly learned her payroll responsibilities and the payroll processing cycle which, because of the timesheet submission schedule, began on Wednesdays. Consequently, the payroll was primarily completed on Fridays when she reported, as others had already prepared the payroll which, in any event, could not be done in a single day.

16. Ms. Madison implies that her job performance was always "satisfactory." This is incorrect.

17. Ms. Madison also falsely alleges that, when we elected not to renew her contract, I told her that I "did not believe that [she] could contribute to the Agency, nor keep pace with her co-workers' workload." ¶ 18. I never made any such statements.

18. Ms. Madison correctly recalls, however, that I offered to assist her in securing other employment, and told her that I would provide a favorable job reference. Personally, I like Ms. Madison; we are about the same age and have many things in common, and I enjoyed the friendly conversations we had.

19. When I told her that we would not be renewing her contract, her immediate response was to ask me not to do it, saying that she was very close to qualifying for her federal pension. For this reason, among others, I offered to assist her in finding other employment.

This declaration consists of nineteen (19) numbered paragraphs on four (4) pages. I declare under penalty of perjury that the foregoing is true and correct.

Executed on   11/13/07   .

Jo Ann Smoak

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
                                                    )
                                                    )
IN RE: JURY ISSUE                        )          Civil Action No. 07-mc-289 (RMC)
                                                    )
                                                    )
_____)

<u>ORDER</u>

Upon consideration of Christine Madison's Motion for Order to Show Cause, the Memoranda of Points and Authorities in Support thereof and in opposition thereto, her Petition Pursuant to the Jury System Improvements Act, the entire record herein, and it appearing that the relief should be denied, it is hereby:

ORDERED, that Christine Madison's Motion for Order to Show Cause be, and hereby is, DENIED, and it is

FURTHER ORDERED, that the Petition Pursuant to the Jury System Improvements Act is hereby DISMISSED.

SO ORDERED.


DATE: _____          _____
                                                       ROSEMARY M. COLLYER
                                                       United States District Judge